UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

GALE CLAPPER,

    Plaintiff,

v.

UNITED AIRLINES, INC.;
ABC INSURANCE COMPANY

    Defendants

Case No.: _____

Jury Trial Demanded

## COMPLAINT

NOW COMES Plaintiff Gale Clapper, by her attorneys, Cade Law Group, LLC, and as for her Complaint against Defendants United Airlines, Inc., and ABC Insurance Company (collectively "Defendants", unless otherwise noted) alleges and shows to the Court as follows:

### INTRODUCTION

1. This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) (1) and (3), as amended by Title I of the Civil Rights Act of 1991 ("Title VII") to correct unlawful employment practices on the basis of age, disability, and retaliation undertaken by Defendants, and to provide appropriate relief to Plaintiff Gale Clapper.

2. This also is an action under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 634 *et seq.*, to correct unlawful employment practices on the basis of age and retaliation undertaken by Defendants, and to provide appropriate relief to Plaintiff Gale Clapper.

3. This also is an action under the American with Disabilities Act of 1990 ("ADA"),

42 U.S.C. §§ 12101–12213 (1994) *et seq.*, as amended by the American with Disabilities Amendment Act of 2008 ("ADAA"), to correct unlawful employment practices on the basis of disability and retaliation undertaken by Defendants, and to provide appropriate relief to Plaintiff Gale Clapper.

4. This also is an action under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. 1001, § 510*, et seq.*, to correct unlawful employment practices in intentionally interfering with Clapper's benefits and retaliating against her for the exercise of her rights and benefits under her employee benefit plan undertaken by Defendants, and to provide appropriate relief to Plaintiff Gale Clapper.

5. As alleged with greater particularity below, Defendants engaged in unlawful employment discrimination by terminating Clapper on the basis of her age and disability, and retaliating against her under Title VII, the ADEA, the ADA, and ERISA.

**JURISDICTION**

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f) (1) and (3); Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 634 *et seq.*; the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (1994) *et seq.*, as amended by the American with Disabilities Amendment Act of 2008 ("ADAA"); and the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. 1001, § 510*, et seq.*

7. Plaintiff Gale Clapper (Clapper") has complied with all jurisdictional prerequisites and conditions precedent to action under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the American with Disabilities

Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (1994) *et seq.*, as amended by the American with Disabilities Amendment Act of 2008 ("ADAA"), by timely filing a charge of discrimination with the EEOC on November 4, 2019. *See* **Exhibit A**. More than sixty (60) days have passed from the date in which Clapper filed her charge.

8. Clapper received a notice of right to sue on or about February 3, 2020. *See* **Exhibit B**.

9. This Court has supplemental jurisdiction over any other claims Clapper could make, pursuant to 28 U.S.C. §1367, because they would form part of the same case or controversy as the aforementioned claims.

10. Venue in this judicial district is proper, by virtue of 28 U.S.C. §1391, as Clapper worked for Defendant United Airlines, Inc. ("United") in the Northern District of Illinois, and Defendants do business in the Northern District of Illinois.

## PARTIES

11. Plaintiff Gale Clapper is an adult white female residing 1216 Lakefield Road, Grafton, Wisconsin 53024. She is, and was at all material times, over forty (40) years of age.

12. Defendant United Airlines, Inc. ("United") is, and was at all material times, an Illinois Corporation located in the State of Illinois with a principal place of business at 233 S. Wacker Drive, Chicago, Illinois 60606.

13. Defendant ABC Insurance Company is believed to be, and is believed to have been at all material times, an insurance company that had in place a policy or policies which insured, totally or partially, Defendant United Airlines, Inc. for any or all liability for its actions against Plaintiff Gale Clapper.

**FACTS**

14. Plaintiff Clapper was employed by Defendant United Airlines, Inc. as a Flight Attendant and began her employment with United on January 30, 2006.

15. As an employee of United, Clapper was provided several health benefits. One of these employee benefits was access to medical care with Rush Health's Center of Excellence Program, which partnered with United to offer medical services to United employees at a reduced rate.

16. At all material times, Clapper performed her work duties in accordance with United's reasonable expectations of performance, quality, and conduct. There was never a negative remark on Plaintiff's work history. She never missed a flight or showed up late, nor was issued any corrective action or demerit points. On the contrary, Clapper received recognition on several occasions for working during holidays and weather emergencies.

17. At all material times, Clapper had been a model Flight Attendant for over thirteen years with United, particularly in her helpful and proactive treatment of – and interactions with – passengers. On several occasions, she received so-called "orchid letters" from passengers who went out of their way to contact United to praise her service and tell United how she had helped them. In more than one occasion, Clapper dealt with passengers' medical emergencies, including a passenger who was a physician, and who she helped receive medical assistance for himself, for which he thanked her effusively.

18. There had never been any issues with Clapper's integrity and honesty during her lengthy tenure with United. On the contrary, on one occasion, she found a passenger's driver's license left on the plane and gave it to the gate agent, who looked up the passenger's record and noted the city where she had gotten off the plane. Plaintiff mailed the passenger her driver's license when Plaintiff arrived at the passenger's home city, and later received

an email from the passenger, thanking her.

19. During her tenure with United, Clapper was a hard-working Flight Attendant who often sought additional work hours and worked numerous back-to-back flights. Prior to her termination, Clapper had flown a total of 146 hours (20 days) during the month of March 2019 alone. By way of comparison, an average flight attendant at United flies 80 hours per month. Clapper had also received perfect attendance letters, and had been commended for being proactive in arriving early for standby assignments.

20. For several years, stemming from work-related injury in 2014, Clapper had experienced limited maneuverability in her right leg, which over time caused her hip pain, which substantially limited several of her everyday life activities and, in turn, made it difficult for her to perform the duties of her job as a Flight Attendant. Clapper suffered almost constant hip pain, and walked with a pronounced limp during her last three years at United. United was aware of this, and Clapper's coworkers often asked her if she was okay.

21. Because of her busy schedule, Clapper had been unable to address her hip pain. However, sometime in early April of 2019, Clapper was finally able to schedule hip replacement surgery at Midwest Orthopaedics at Rush University Hospital, through the Center of Excellence Program with Rush, which partnered with United to offer orthopedic and spine surgeries to United employees at a reduced rate. Clapper's hip surgery was originally scheduled for June 14, 2019, but was rescheduled for May 31, 2019.

22. Clapper subsequently went on approved medical leave for her hip condition on April 19, 2019, after her pre-operation examination, in advance of her surgery.

23. Before she went on approved medical leave, on or about April 2, 2019 at O'Hare Airport in Chicago, after a grueling 14-hour workday which included a transcontinental flight, a cleaner handed the flight attendants an item (an Apple iPad) that had

been found in the first-class section on the aircraft. The person at United who is usually responsible for retrieving and retaining passengers' lost items – the Purser –hurried off the aircraft, leaving the item for someone else to deal with. As the last flight attendant to leave, Clapper saw that the iPad was on the counter, so she grabbed it and unsuccessfully tried to catch up with the Purser then came back looking for an agent at the podium, but no one was there. Due to the lack of secure options at that late hour, Clapper took the item home with her, intending to trace the owner. While in possession of the item, Clapper never used, tampered with, wiped, or even turned off the item. Clapper's intention was to locate the passenger through Apple and return the iPad.

24. At some point while Clapper flew on United assignments for the next twelve days, United contacted her about an unrelated work-related issue, yet United never contacted Clapper about the item in question, and instead called the Ozaukee County Sheriff to accuse Clapper of theft. Much to Clapper's surprise, the Ozaukee County Sheriff called her on April 16, 2019, and asked Clapper if she had knowledge of an iPad left on one of her flights, which she readily admitted and said she had been gone and unable to return. The Sheriff told her to call United security, which she immediately did. United security requested that she return the item soon, so Clapper did so right away.

25. On April 16, 2019, Clapper drove two hours to O'Hare Airport to return the item, and explained that she had not been able to return it earlier, because she had been flying and dealing with personal issues, including setting up medical appointments for her surgery, and had forgotten to return the item sooner.

26. At a meeting with United on May 6, 2019, which did not include her supervisor, Clapper explained to United that she had intended to return the passenger's item, that she had no intention to keep the item, and that she had never even turned off, tampered with, or

used the item. Clapper again made reference to her age and her upcoming surgery, and asked that any potential employment action be postponed until after she came back from her leave.

27. On May 20, 2019, United terminated Clapper's employment through a supervisor's letter stating it was her decision to do so, without following the progressive discipline policy required by the Union contract in place at the time, without providing her any further opportunity to explain herself, and without completing the grievance process. By reasonable knowledge and belief, the decision to terminate Clapper's employment was taken by an individual at United who never met with Clapper.

28. At the time United terminated Clapper's employment, she was 67 years old.

29. At the time United terminated Clapper's employment, she was on approved medical leave.

30. By reasonable knowledge and belief, after Clapper's employment was terminated, United hired Flight Attendant(s) with less experience than Clapper, and who is/are younger than forty (40) years old to replace her. At the time it terminated Clapper's employment, United had been taking steps to ensure that, within the next several years, at least half of its Flight Attendants would be under the age of 30.

31. United terminated Clapper at a date before her scheduled hip surgery, with the intent of ensuring that Clapper would not receive the surgery through the Rush Health employee co-pay benefit program while employed by United. Clapper was only able to eventually obtain the surgery by rescheduling it to May 31, 2019, and relied on Medicare for coverage on June 1. By reasonable knowledge and belief, United was planning to phase out the Rush Health employee co-pay benefit program at the time it terminated Clapper's employment.

32. After being informed of her termination, Clapper complained, in writing, to United that her termination was unlawful.

## COUNT I – AGE AND DISABILITY DISCRIMINATION

33. Clapper re-alleges and incorporates by reference the above paragraphs as if they were fully set forth herein.

34. United unlawfully discriminated against Clapper on the basis of her age and disability when it terminated her employment, in reckless disregard of her federally-protected rights under Title VII of the Civil Rights Act of 1964 as amended; Title I of the Civil Rights Act of 1991 ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* and the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (1994) *et seq.*, as amended by the American with Disabilities Amendment Act of 2008 ("ADAA").

35. At time United terminated Clapper's employment, United knew – or should have known – that Clapper was on approved medical leave and was scheduled for hip surgery. United's termination of Clapper's employment at that point resulted in her unnecessary emotional suffering and physical exhaustion, while she scrambled – on her own – to re-schedule her surgery and obtain coverage through Medicare.

36. As a result of Defendant's intentional discrimination, Clapper has suffered damages in the form of loss of wages, unpaid accrued benefits, and other employment benefits, attorney's fees and costs, and other damages that she will establish at trial.

## COUNT II – RETALIATION

37. Clapper re-alleges and incorporates by reference the above paragraphs as if they were fully set forth herein.

38. United unlawfully and intentionally retaliated against Clapper by terminating her

employment for participating in legally-protected activity in the workplace, in reckless disregard of her federally-protected rights under Title VII of the Civil Rights Act of 1964 as amended; Title I of the Civil Rights Act of 1991 ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.;* and the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (1994) *et seq.*, as amended by the American with Disabilities Amendment Act of 2008 ("ADAA").

39. Clapper complained to United about her termination and about United's refusal or failure to provide Clapper with an opportunity to explain her position to her supervisor and move through a grievance process appropriately, and expressly referenced her age and her disabling condition, as well as the fact that she was on medical leave. In retaliation for Clapper's complaint, United immediately terminated her.

40. As a result of Defendant's unlawful and intentional retaliation, Clapper has suffered damages in the form of loss of wages and other employment benefits, attorney's fees and costs, and other damages that she will establish at trial.

## COUNT III – INTERFERENCE WITH EMPLOYEE BENEFITS

41. Clapper re-alleges and incorporates by reference the above paragraphs as if they were fully set forth herein.

42. United unlawfully interfered with Clapper's earned or promised employee benefits, in reckless disregard of her federally-protected rights under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. 1001, § 510, *et seq.*

43. United unlawfully terminated Clapper's employment shortly before she was scheduled for hip surgery through the Rush Health employee co-pay benefit program offered by United, in interference with – or retaliation for – her use of, or access to, this benefit.

44. As a result of United's unlawful employment practices in terminating Clapper's

employment prior to the use of health benefits, Clapper has suffered damages in the form of loss of wages and other employment benefits, attorney's fees and costs, and other damages that she will establish at trial.

## RELIEF

WHEREFORE, Clapper respectfully request that this Court:

a. Enter a judgment that the Defendants violated Title VII of the Civil Rights Act of 1964, as amended;

b. Enter a judgment that the Defendants violated the Age Discrimination in Employment Act of 1967;

c. Enter a judgment that the Defendants violated the American with Disabilities Act of 1990;

d. Enter a judgment that the Defendants violated the Employee Retirement Income Securities Act of 1974;

e. Enter judgment against the Defendants and in favor of Clapper for prospective and retrospective monetary relief;

f. Enter judgment against the Defendants and in favor of Clapper for compensatory damages;

g. Enter judgment against the Defendants and in favor of Clapper for punitive damages, including punitive damages pursuant to 42 U.S.C. §1981a;

h. Order Defendant United to reinstate Clapper;

i. Award Clapper the costs of this action and reasonable attorney's fees; and

j. Grant Clapper such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Clapper demands a trial by jury on all issues of fact.

Dated this April 30th, 2020.

**CADE LAW GROUP LLC**

By: s/Nathaniel Cade, Jr.
Nathaniel Cade, Jr.
P.O. Box 170887
Milwaukee, WI 53217
(414) 255-3802 (phone)
(414) 255-3804 (fax)
nate@cade-law.com

Attorneys for Plaintiff Gale Clapper