UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GALE CLAPPER,

        Plaintiff,

        v.

UNITED AIRLINES, INC.,

        Defendant.

No. 20 CV 2635

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Gale Clapper worked as a flight attendant for defendant United Airlines. Clapper walked with a limp, and scheduled hip-replacement surgery for June. Before her medical leave, Clapper, 67 years old at the time, took an iPad home after a passenger left it behind on a flight. She never used the iPad and eventually returned it, but United fired her. She rescheduled her surgery for the last day in May, before losing her health benefits through United. Clapper accuses United of discriminating against her based on her age and disability, retaliating against her for complaining, and unlawfully interfering with her benefits in violation of ERISA. United moves to dismiss the retaliation and ERISA claims. For the reasons discussed below, the motion to dismiss is granted in part, denied in part.

## I.    Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

## II.    Background

Clapper began working for United Airlines as a flight attendant in 2006. [1] ¶ 14.[1] United provided several health benefits, including Rush Health's Center of Excellence program, which offered medical services to United employees at a reduced rate. [1] ¶ 15. Clapper was a model flight attendant and often received recognition and thanks from passengers she had helped. [1] ¶¶ 16–19.

In 2014, Clapper suffered a work-related injury and began to experience hip pain and limited mobility in her right leg. [1] ¶ 20. She walked with a limp, which made it hard to perform her duties as a flight attendant. [1] ¶ 20. She scheduled hip-replacement surgery for June 14, 2019, through the Rush Center of Excellence program. [1] ¶ 21.

On April 2, 2019, after a transcontinental flight, a cleaner found an Apple iPad that a passenger had left behind and gave it to the flight attendants. [1] ¶ 23. Clapper, the last flight attendant to leave, saw the iPad on a counter and tried to catch up with the person responsible for processing passengers' lost items, but couldn't reach that person. [1] ¶ 23. She then tried to find an agent at the gate, but no one was there. [1]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the complaint. [1].

¶ 23. Clapper took the iPad home with her and planned to find its owner and return it; she never used the iPad. [1] ¶ 23.

On April 16, the Ozaukee County Sheriff called Clapper to ask about the iPad. [1] ¶ 24. Clapper said she had it, and the sheriff told her to return it to United security. [1] ¶ 24. That day, Clapper drove to O'Hare to return the iPad, and said she hadn't done so earlier because she had been setting up medical appointments for her surgery and had forgotten about it. [1] ¶ 25.

Three days later, Clapper began her approved medical leave. [1] ¶ 22. On May 6, at a meeting with United that didn't include her supervisor, Clapper explained that she had intended to return the iPad and that she had never used it. [1] ¶ 26. She mentioned her upcoming surgery, and asked United to postpone any potential employment action until after her medical leave. [1] ¶ 26. On May 20, United fired Clapper through a supervisor's letter, without following any grievance process or the progressive discipline policy required by the union contract. [1] ¶ 27. Clapper was 67 and on medical leave. [1] ¶¶ 28–29. After she was told of her termination, Clapper complained in writing to United that her termination was unlawful. [1] ¶ 32.

Clapper alleges that United fired her to prevent the Rush Health employee co-pay program from covering her surgery. [1] ¶ 31. Clapper rescheduled the surgery to May 31, and relied on Medicare beginning June 1. [1] ¶¶ 21, 31. United was planning to phase out the Rush employee benefit program when it fired Clapper. [1] ¶ 31.[2]

---

[2] Clapper also named ABC Insurance Company as a defendant, but hasn't served any insurance company. ABC Insurance Company is dismissed without prejudice. The clerk will terminate it from the case.

Clapper filed an EEOC charge alleging age and disability discrimination on November 4, 2019, and received a right-to-sue letter on February 3, 2020. [1] ¶¶ 7–8.

## III. Analysis

Clapper claims that United unlawfully discriminated against her based on her age and disability and retaliated against her in violation of Title VII, the ADEA, and the ADA. She also alleges that United unlawfully interfered with her employee benefits under ERISA. United moves to dismiss the retaliation and ERISA claims under Rule 12(b)(6). It argues that Clapper hasn't exhausted her retaliation claim with the EEOC, fails to state a claim for retaliation, and fails to state an ERISA interference claim.

### A. The Retaliation Claim

Before bringing a Title VII, ADEA, or ADA claim, a plaintiff must exhaust her administrative remedies by filing charges with the EEOC and receiving a right-to-sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (Title VII); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 400 (7th Cir. 2019) (ADEA); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (ADA). She may sue in federal court once she receives the letter, but may only bring claims that were included in the EEOC charge or those that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez*, 937 F.3d at 1004 (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)). This requirement gives the EEOC and the employer a chance to settle, and ensures that the employer has notice of the conduct it's being accused of. *Id.* Claims

are like or reasonably related when there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. *Id.* At a minimum, the charge and complaint must describe the same conduct and implicate the same individuals. *Id.*[3]

Clapper's theory of retaliation is unclear. In her complaint, she alleges that, after "being informed of her termination," she complained in writing to United that her termination was unlawful and that she was not given a chance to explain herself. [1] ¶¶ 32, 39. In response, "United immediately terminated her." [1] ¶ 39. She frames her theory differently in her response brief, asserting that in retaliation for her complaint, United "upheld" her termination. [27] at 8.

Clapper submitted her EEOC charge on November 11, 2019. [1-1] at 2. She checked the boxes saying she had been discriminated against based on age and disability, but left the box for retaliation blank. She wrote that she had been discharged as a flight attendant on May 20, 2019, and that she believed she had been "discriminated against on the bases of age and disability." [1-1] at 2.

Nothing in Clapper's EEOC charge would have given United notice that she was alleging retaliation in addition to discrimination. The EEOC charge was about being discriminated against on the bases of age and disability, and she made no

---

[3] Administrative exhaustion is an affirmative defense that ordinarily need not be overcome at the pleading stage, unless the allegations in the complaint "unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Here, the complaint establishes the relevant facts, and Clapper does not object to considering the defense on a 12(b)(6) motion, so resolution is appropriate.

mention of internally challenging that discrimination or her termination. She presumably complained in May 2019, when United fired her, and filed her EEOC charge many months later. There was no reason to omit allegations of retaliation from her EEOC charge.

Nor was her retaliation claim reasonably related to the discrimination claim. As a "general matter," courts "do not consider a retaliation charge to be reasonably related to a discrimination claim." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 565 (7th Cir. 2019). No overlapping conduct links the two claims here. And while retaliation claims can grow out of EEOC discrimination charges when an employer acts in response to the employee filing an EEOC complaint, *Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 857 n.11 (7th Cir. 2019), Clapper doesn't allege that United retaliated against her based on her EEOC charge, but because of an internal complaint. Clapper has failed to exhaust her retaliation claim. *See, e.g., Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (plaintiff's EEOC complaint "ma[d]e[] no mention" of protected activity or adverse action, precluding him from "relying on the original charge of discrimination as a basis for his retaliation claim").

United's argument that Clapper has not stated a retaliation claim is underdeveloped and relegated to a footnote. [20] at 7 n.6. I address it in the interest of completeness. A plaintiff alleging retaliation must establish that she engaged in a statutorily protected activity and was subjected to an adverse employment action as a result. *Carlson v. CSX Transp., Inc.* 758 F.3d 819, 828 (7th Cir. 2014) (Title VII);

6

*Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007) (ADA). The protected activity must have been a but-for cause of the adverse employment action. *Carlson*, 758 F.3d at 828 n.1.

Clapper fails to adequately plead any of these elements. Filing an internal complaint with an employer can be a protected activity, but the complaint must be about an employment practice made unlawful by Title VII, the ADEA, or the ADA. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018). Clapper complained about "United's refusal or failure to provide Clapper with an opportunity to explain her position to her supervisor and move through a grievance process." [1] ¶ 39. United's deviating from its internal procedures is not an employment condition prohibited by the antidiscrimination statutes. Clapper adds that she "expressly referenced" her age, disability, and medical leave in her complaint, but doesn't allege that she actually complained about discrimination.

She doesn't state an adverse employment action either. She alleges that United immediately fired her in response to her complaint, but also alleges that her complaint was about United unlawfully firing her. United had already decided to terminate her before she complained, and it couldn't have fired her a second time in response to it. If Clapper means that United's adverse action was upholding its decision to terminate Clapper after her complaint, as she says in her response brief, that doesn't plausibly establish an adverse employment action. The action must be one that would dissuade a reasonable worker from participating in protected activity. *Huri v. Office of the Chief Judge*, 804 F.3d 826, 833 (7th Cir. 2015). United's affirming

7

a decision it had already made wouldn't dissuade a reasonable worker from complaining. Whenever an employee appeals a termination decision, the employee knows the employer may deny it. The chance of denial isn't heightened because the request is made. And although acts of a former employer can constitute actionable retaliation, *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), post-termination retaliation usually affects an employee's "future employment prospects." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996); *see also Robinson*, 519 U.S. at 339, 346 (allowing Title VII claim where a former employer gave a bad reference to prospective employer in retaliation for plaintiff filing an EEOC charge). United would have had to take some independent retaliatory action affecting Clapper's future employment to constitute an adverse action in response to a post-termination complaint. Finally, Clapper doesn't plausibly allege that her complaint was the but-for cause of an adverse action. As alleged, United didn't fire her in response to a complaint. United fired her, she complained, and United stood by its decision. The only plausible inference is that United declined to reinstate her for the same reasons it fired her in the first place. Denying a request for reconsideration is not synonymous with retaliating against Clapper for asking.

Dismissals for failure to exhaust administrative remedies should be without prejudice. *Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009). Count II is dismissed without prejudice.

8

*B. The ERISA Claim*

Section 510 of ERISA makes it unlawful to discharge a person in an employee benefits plan for the purpose of interfering with her attainment of benefits under the plan. 29 U.S.C. § 1140; *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 821 (7th Cir. 2014). Section 502(a) of ERISA provides the civil cause of action for the private enforcement of the rights protected in § 510. *Teamsters Local*, 741 F.3d at 821. To state a claim for a violation of § 510, a plaintiff must allege that she is a member of an ERISA plan, that she was qualified for the position, and that the defendant discharged her with the specific intent to interfere with her attainment of benefits. *Teamsters Local*, 741 F.3d at 826; *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 943 (7th Cir. 2007). Actions that "only incidentally affect the participant's benefits" do not violate § 510. *Teamsters Local*, 741 F.3d at 826; *see also Isbell v. Allstate Inc. Co.*, 418 F.3d 788, 796 (7th Cir. 2005) ("The loss of benefits to an employee as a result of an employer's action is not, by itself, sufficient to prove a violation of § 510."). Specific intent to interfere must be "at least a motivating factor" for the adverse action. *Teamsters Local*, 741 F.3d at 826.

United doesn't contest that Clapper adequately pleaded any of these elements, so any argument to that effect is waived. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("a party waives an argument by failing to make it before the district court," including "affirmative argument[s] in support of a motion to dismiss"). In any event, Clapper has stated an ERISA claim. She pleads that she received health insurance through her employer, that she was qualified for the

9

position, and that United fired her with the intent to frustrate her reliance on benefits. United knew about Clapper's surgery—Clapper told United security that she forgot about the iPad because she was distracted by preparing for her surgery. Then, at another meeting with United, she referenced her upcoming surgery and asked United to postpone any employment consequences until after her medical leave. United fired her two weeks later. Where Clapper specifically asked United not to take any action that could interfere with her medical leave, it's a reasonable inference that United's desire to prevent Clapper from relying on United-provided benefits was at least a motivating factor in the decision. The way United fired her also supports an inference of intent—Clapper alleges United did so quickly, without allowing her to access the employee grievance process or giving her another chance to explain herself. Finally, Clapper alleges that United intended to phase out the Rush employee benefits program. Given that United knew about Clapper's upcoming surgery, declined her request to postpone any action until after her surgery, fired her before the surgery in contravention of its normal procedures, and intended to phase out the benefits program she was relying on, Clapper has adequately alleged that United intended to interfere with her benefits.

United argues that Clapper's claim should nevertheless be dismissed. United says Clapper rescheduled her surgery so that her employer-provided benefits covered it, so she never suffered a loss of benefits.[4] But coverage for the surgery was just one

---

[4] According to Clapper's complaint, her employer benefits covered her surgery, and Medicare kicked in the next day. [1] ¶ 31. But in her response brief, she states the surgery was covered by Medicare. Clapper may not amend her complaint in her response brief, *Pirelli Armstrong*

benefit United provided. Clapper lost access to the Rush employee benefits program when she was fired. She had to rely on Medicare starting June 1. If Clapper hadn't been fired, her employee benefits would have continued beyond May 31. So Clapper has stated a loss of benefits.[5]

Further, United points to no authority supporting its argument that a plaintiff must allege some identifiable loss in benefits to state a § 510 claim. Other ERISA causes of action do require plaintiffs to plead an actual injury. In a breach-of-fiduciary-duty claim, for example, the plaintiff must plead that she was harmed by the breach. *Bator v. Dist. Council 4*, 972 F.3d 924, 929 (7th Cir. 2020). And a plaintiff can bring a claim "to recover benefits due" under § 502(a)(1)(B) of the statute. 29 U.S.C. § 1132(a)(1)(B). But Clapper brings a claim under § 510, which only provides equitable remedies. She doesn't want reimbursement for the denial of a benefit owed; she seeks reinstatement as a flight attendant. The "emphasis of a Section 510 action" is to "prevent" an employer from "interfer[ing] with a participant's ability to collect present or future benefits." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992). If United fired Clapper to keep her from relying on health coverage, United can't escape liability because Clapper managed to get a scheduling change at the last

---

*Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011), so I rely on the facts as stated in the complaint.

[5] To the extent United's argument could be read as asserting a lack of standing or harm falling within the scope of the statute, § 502 of ERISA only requires that a plaintiff bringing an interference claim be a "participant, beneficiary, or fiduciary" to bring a claim for equitable relief. 29 U.S.C. § 1132(a)(3).

minute. On this complaint, Clapper is the type of plaintiff that § 510 was meant to protect.[6]

The remedy Clapper seeks doesn't warrant dismissal either. Section 502(a)(3) limits the remedies for a § 510 violation to "appropriate equitable relief." 29 U.S.C. § 1132(a)(3); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 452–53 (7th Cir. 2016). Equitable relief can include money damages, but "*only* if the plaintiff seeks the return of 'specifically identified funds that remain in the defendant's possession,'" to which an equitable lien could attach, such as settlement funds. *Cent. States*, 840 F.3d at 453 (quoting *Montanile v. Bd. of Trs.*, 577 U.S. 136, 144 (2016)).

Clapper alleges that she's suffered "loss of wages and other employment benefits, attorney's fees and costs, and other damages that she will establish at trial." [1] ¶ 44. In her prayer for relief, she requests compensatory damages, punitive damages, and reinstatement as a flight attendant, among other things. [1] ¶¶ f–h. Clapper doesn't ask for specifically identifiable funds in United's possession, and United is right that she can't recover compensatory or punitive damages from her ERISA claim. But she asks for reinstatement as a flight attendant, which is equitable relief. *Lorillard v. Pons*, 434 U.S. 575, 583 n.11 (1978). Since Clapper asks for an equitable remedy, there's no reason to dismiss her claim.

---

[6] Of course, anyone who loses her job is almost certain to lose employment benefits, so it would be redundant and unnecessary to require plaintiffs to plead some specific loss in the § 510 context. *See Sharp v. BW/IP Int'l, Inc.*, 991 F.Supp. 451, 458 (E.D. Pa. 1998) ("[A] loss of benefits is an inevitable consequence of virtually all employment terminations." (citation omitted)).

Finally, United is wrong that equitable relief under ERISA would be impermissibly duplicative of the equitable relief Clapper could obtain under Title VII, the ADA, and the ADEA. Section 502 creates ERISA's private right of action and provides the available remedies for different claims. So, for example, a plaintiff seeking to recover unpaid benefits sues under § 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B). If a plaintiff brings an ERISA claim for breach of fiduciary duty, § 502(a)(2) provides the remedy. 29 U.S.C. §§ 1132(a)(2), 1109. Section 502(a)(3)—the section that Clapper relies on—is a "catchall" provision that enables a beneficiary or participant to bring a civil action to enjoin any act that violates any provision of the statute. 29 U.S.C. § 1132(a)(3). The catchall provision provides "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). If another section of § 502 provides a remedy for a claim, then a plaintiff may not rely on the catchall provision. *See Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) (relief under § 502(a)(3) was available "only to the extent that such relief is not available" under §§ 502(a)(1)(B) or (a)(2)); *Mondry v. Am. Family Mut. Ins. Co*, 557 F.3d 781, 805 (7th Cir. 2009) (adopting majority of circuits' view that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un* available under subsection (a)(3)"); *see also Griffin v. TeamCare*, 909 F.3d 842, 846 (7th Cir. 2018).

Clapper brings a claim of interference under § 510, and the catchall provision provides the remedy for a § 510 violation. *Teamsters Local*, 741 F.3d at 824; *Tolle*, 977 F.2d at 1133. United doesn't suggest that relief is available to Clapper under

§§ 502(a)(1) or (a)(2). Rather, United argues that Clapper can't rely on the catchall provision if Congress has provided the same relief in another statute. But United points to no authority interpreting *Varity Corp.* so broadly. United cites to *Griffin*, where the court of appeals observed that, "Equitable relief under section 1132(a)(3) is available only when Congress does not provide relief elsewhere." 909 F.3d at 846. But read in context, the court clearly meant that relief under § 502(a)(3) is not available when Congress did not provide relief elsewhere *in ERISA*.

Finally, allowing Clapper's ERISA claim to proceed even though she seeks reinstatement through other statutory remedies is consistent with the principle that complaints can allege alternative theories for relief. And here, there is no threat of duplicative recovery—Clapper can only be reinstated once.

## IV.     Conclusion

Defendant's motion to dismiss [19] is granted in part, denied in part. Count II is dismissed without prejudice for failing to exhaust administrative remedies. Count III is not dismissed. United shall file an amended answer to include Count III by February 9, 2021. The parties shall file a status report with a proposed discovery schedule on February 16, 2021.


ENTER:

_____
Manish S. Shah
United States District Judge

Date: January 26, 2021

14